UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GIA M. CALLAHAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:20-CV-03-HAB ) |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Gia Callahan's ("Callahan") appeal of the Social Security Administration's Decision dated December 7, 2018 (the "Decision"). Callahan filed her Complaint against the Commissioner of Social Security (ECF No. 1) on January 3, 2020. Callahan filed her Brief in Support of Reversing the Decision of the Commissioner of Social Security (ECF No. 10) on June 26, 2020. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 11) on August 4, 2020. Callahan filed her reply (ECF No. 12) on August 25, 2020. This matter is now ripe for determination.

**ANALYSIS**

**1.**   *Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial

---

[1] Andrew Saul is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2. *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

First, the ALJ found that Callahan last met the insured status requirements of the Social Security Act through December 31, 2021. At step one, the ALJ found that Callahan has not engaged in substantial gainful activity since January 20, 2017, the alleged onset date. At step two, the ALJ determined that Callahan had the following severe impairments: lupus, fibromyalgia, Sjögren's Syndrome, Raynaud's Syndrome, osteoarthritis of the hands, major depressive disorder, and post-

traumatic stress disorder (PTSD). The ALJ further found that Callahan had the non-severe impairments of lumbar degenerative disc disease and recurrent tract infections.

At step three, the ALJ found that Callahan did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526)." (R. 13). At step four, the ALJ found that Lawrence had the residual functional capacity ("RFC") to:

> [p]erform light work as defined in 20 CFR 404.1567(b). The claimant could handle and finger frequently. She could climb ramps or stairs occasionally, never climb ladders, ropes, or scaffolds, balance occasionally, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant could never work at unprotected heights or around moving mechanical parts. The claimant could never work at unprotected heights or around moving mechanical parts. The claimant should have no concentrated exposure to extreme cold or near dust, fumes, odors, and pulmonary irritants. The claimant is limited to performing simple, routine tasks. She could occasionally respond appropriately to supervisors, coworkers, and the public with brief and superficial contact defined as no lower than an eight in terms of the fifth digit of the DOT code.

(R. 15).

At step five, the ALJ determined that Callahan was unable to perform her past relevant work. (R. 20). However, the ALJ found that there were jobs that existed in significant numbers in the national economy that she could have performed. (R. 20-21). Therefore, the ALJ found that Callahan was not disabled. (R. 21.)

### 3. *Medical Opinion Evidence*

Callahan takes issue with the weight the ALJ assigned to the medical opinion of her treating psychologist, Dr. Patricia Mooney. Dr. Mooney provided an opinion in August 2018 in which she opined that Callahan would be unable to meet competitive standards in the following areas: the ability to maintain regular attendance and be punctual within customary, usually strict tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically

4

based symptoms; the ability to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to respond appropriately to changes in a routine work setting; the ability to deal with normal work stress; and the ability to deal with stress of semiskilled and skilled work. (R. 1340-41). Dr. Mooney also opined that Callahan would miss more than four days of work per month. (R. 1342). The ALJ provided this opinion little weight, finding it was inconsistent with treatment notes "showing improvement with treatment and with mental status examinations showing largely unremarkable findings." (R. 19).

Agency regulations address the evaluation of opinion evidence for claims filed before March 27, 2017, in 20 C.F.R. § 404.1527. The regulations provide that, regardless of its source, an adjudicator will evaluate every medical opinion that she receives. 20 C.F.R. § 404.1527(c). An adjudicator is required to provide good reasons for the weight given to a treating source's opinion and will give a treating source's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." 20 C.F.R. § 404.1527(c)(2).

Callahan argues that the ALJ erred by failing to consider Dr. Mooney's opinion under the factors laid out in 20 C.F.R. § 404.1527(c). The ALJ is to evaluate medical opinions by considering: the examining relationship; the treatment relationship (including the length of the treatment relationship and the frequency of examination, as well as the nature and extent of the treatment relationship); supportability of the opinion; consistency of the opinion; the specialization of the physician; and any other factors which tend to support or contradict the medical opinion. 20 C.F.R. § 404.1527(c). Specifically, Callahan asserts that the ALJ failed to discuss Dr. Mooney's specialization or her treating relationship with Callahan.

5

The ALJ failed to consider Dr. Mooney's specialization or her extensive treatment relationship with Callahan in weighing her medical opinion. An ALJ should generally give more weight to a medical opinion of a specialist concerning medical issues related to his or her area of specialty. 20 C.F.R. § 404.1527(c)(5). Dr. Mooney was Callahan's treating psychologist who diagnosed Callahan with severe PTSD, depression, and anxiety. (R. 581, 1338). Moreover, Dr. Mooney has an extensive treating history with Callahan. Dr. Mooney treated Callahan for over three years, meeting her for weekly to monthly hour-long sessions. (R. 537, 600, 780, 1338). The ALJ failed to consider this extensive, three year, in-person treating relationship when weighing Dr. Mooney's opinion as required by the regulations. *See Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018) (remanding where the ALJ failed to consider the factors in 20 C.F.R. §404.1527(c)).

### *4. Subjective Symptoms*

Callahan also asserts that the ALJ erred in weighing her subjective symptoms. The ALJ found that Callahan's reported activities of daily living were both internally inconsistent and inconsistent with her allegations of pain and other symptoms. (R. 16). The ALJ provides no other discussion of Callahan's subjective symptoms. The ALJ found that Callahan could prepare meals, do dishes, drive, shop, read, draw, paint, complete crossword puzzles, care for pets, care for herself, and look after her herb garden. (R. 16). However, the ALJ failed to consider the manner in which Plaintiff completed these tasks. Callahan's ability to perform daily activities at her own pace and with breaks does not necessarily indicate an ability to perform full-time work. *Villano v. Asture*, 556 F.3d 558, 563 (7th Cir. 2009). "[M]inimal daily activities" such as preparing simple meals, infrequent grocery shopping, caring for family members, and playing cards "do not establish that a person is capable of engaging in substantial physical activity." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Callahan testified that her husband usually does the shopping and carries the groceries in. (R. 54). She also testified that she can only do the dishes in five-minute spurts before she has to take a break. (R. 54). While she stated she cooks, she testified that she now is limited to easier crockpot cooking, which limits the need for prepping foods or standing for long periods of time to cook. (R. 55). She also testified that she usually must take a break after showering before she is able to continue to get ready due to exhaustion. (R. 55). She also testified that she cannot drive further than a half an hour, and that she usually limits herself to fifteen minutes of driving. (R. 55-56). She stated that driving causes her pain and difficulty in controlling the pedals and steering wheel. (R. 56). She further stated that her husband does all the household chores. (R. 57). While she does state that she takes care of her dog and cat, that she is limited in her abilities to do so. (R. 62). She testified that she can no longer walk her dog due to being unable to walk long distances. (R. 62). She further stated that although she has a "little herb garden that [she likes] to look at," her husband must help her with it. (R. 62). The ALJ failed to consider the way she completes her daily activities. Callahan has testified that she either must take breaks from activities, alter the manner in which she completes them, or ask for help in completing them. The ALJ did not take this into consideration when evaluating her subjective symptoms. The ALJ's description of Callahan's ability to complete daily activities does not include any discussion of the limitations and struggles she has in completing them. A claimant's "ability to perform daily activities, especially if they can be done only with significant limitations, does not necessarily translate into an ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

The ALJ provided no other discussion of Callahan's subjective symptoms outside of analyzing her daily activities, and there is no analysis of whether any other subjective symptoms are consistent with the record. There is no discussion of Callahan's allegations of severe pain or her

7

mental limitations. Failure to discuss Callahan's subjective symptoms within the framework provided in SSR 16-3p, 2016 SSR LEXIS 4, requires remand. SSR 16-3p, 2016 SSR LEXIS 4 at *16. The ALJ has "failed to build a logical bridge from the evidence to his conclusion." *Villano*, 556 F.3d at 562.

**5.** *Mental RFC*

Callahan argues that the ALJ erred by failing to provide the VE with hypotheticals that matched the limitations in the RFC determination.

The RFC measures what work-related activities a claimant can perform despite his limitations. *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004). A claimant's RFC must be based upon the medical evidence in the record and other evidence, such as testimony by the claimant or her friends and family. 20 C.F.R. § 404.1545(a)(3). The ALJ need not discuss every piece of evidence, but must logically connect the evidence to the ALJ's conclusions so that the court can provide meaningful review. *See Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). In making that determination, the ALJ must decide which treating and examining doctors' opinions should receive weight and explain the reasons for that finding. 20 C.F.R. § 404.1527(d), (f). Additionally, the ALJ's RFC assessment must contain a narrative discussion describing how the evidence supports the ALJ's conclusions and explaining why a medical source opinion was not adopted if the ALJ's RFC assessment conflicts with such an opinion. SSR 96-8p, 1996 SSR LEXIS 5, *20, 1996 WL 374184, at **5, 7; *accord Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ found that Callahan had the RFC to "occasionally respond appropriately to supervisors, coworkers, and the public with brief and superficial contact defined as no lower than an eight in terms of the fifth digit of the DOT code." (R. 15). However, Callahan asserts that the ALJ failed to properly provide the VE this information in the hypotheticals. In the hypotheticals to

the VE, the ALJ provided for an individual who could interact with supervisors and co-workers occasionally, but who was limited to occasional brief and superficial contact with the public. (R. 65). The ALJ then defined superficial contact as being "no lower than an eight in terms of the fifth digit of the DOT code." (R. 65). Callahan argues that the VE was not fully apprised of all her limitations, and that the jobs identified by the VE may not represent what she can handle.

"[B]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). If the ALJ relies on VE testimony, "the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record." *Indoranto v. Barnhart*, 374 F.3d 470, 473-74 (7th Cir. 2004). Here, the ALJ did not include limits of brief and superficial contact with supervisors and co-workers when providing hypotheticals to the VE. The hypothetical posed to the VE must include all a claimant's limitations supported by the medical record. Because the hypothetical did not include the limitations of brief and superficial contact with supervisors and coworkers, the ALJ has committed reversible error. *See Yurt*, 758 F.3d at 857.

The Commissioner admits that the wording between the RFC and the hypothetical differ, but he asserts any error is harmless. The Commissioner argues that in both the hypothetical and the RFC, the ALJ defines brief and superficial contact to be no lower than an eight in terms of the fifth digit of the DOT code, and that every occupation identified by the vocational expert has a DOT code with an eight at the fifth digit. However, this argument is faulty. The ALJ did not provide for brief and superficial contact with coworkers and supervisors in the hypothetical to the VE. The VE's testimony may have altered with the addition of brief and superficial contact with supervisors and co-workers as well as with the public. There is no guarantee that the VE's testimony would

remain the same with changes to the hypothetical, as a claimant's ability to interact with supervisor's and co-workers may ultimately alter her ability to work full time. The VE testified that an inability to respond appropriately to supervisors or co-workers would be job preclusive. The ALJ did not allow the VE to consider whether occasional, brief, and superficial contact with supervisors or co-workers would alter her ability to work.

An ALJ often relies on testimony from the VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). The VE's testimony will include a VE's personal experience as well as consistency with the DOT code. The ALJ did not allow for the VE to testify whether the jobs listed would allow for occasional, brief, and superficial contact with supervisors and coworkers. The DOT code being listed at a level eight for each job does not eliminate the need for VE testimony. Automatically deferring to the DOT without considering the VE's view and experience "would make the [DOT] an independent source of listed impairments, giving the Dictionary's team of authors a power that Congress has bestowed on the Commissioner of Social Security." *Donahue v. Barnhart*, 279 F.3d 441, 445 (7th Cir. 2002). The DOT is only a tool used by the VE, and it does not carry any binding force of law by itself. *Id.* "The ALJ must be entitled to accept testimony of a vocational expert whose experience and knowledge in a given situation exceeds that of the [DOT's] authors." *Id.* The VE was not allowed to testify whether her experience or opinion differed from the DOT, as the ALJ did not provide the VE with all of Callahan's limitations. This is in error.

### *6. Other Issues*

Callahan makes several other arguments regarding her physical RFC, mental RFC, and subjective symptoms. Because the Court is remanding on the above issues, it need not discuss the

rest of the arguments addressed in Callahan's brief. Addressing the above issues may alter the RFC determination. Callahan may address these issues on remand.

## CONCLUSION

For the foregoing reasons, the Decision is REMANDED. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on February 9, 2021.

                                            s/ *Holly A. Brady*
                                            JUDGE HOLLY A. BRADY
                                            UNITED STATES DISTRICT COURT